The next argued case is No. 161381, CVX Diagnostics against U.S. Endoscopy. Mr. George. May it please the Court. The issue on this appeal is whether the prior art, the single prior reference perisher, anticipates the claims of the 044 patent. And to do that, it has to teach that the brush goes through the superficial, intermediate and basal layers as well as the basement membrane and the submucosa. So that's about five layers and that's what Claim 3 requires. Claim 1 requires two. And I'm going to refer to those as the five layers. We believe the Board erred because it misread the perisher reference on this critical issue of going through the five layers and it also misread the testimony of the patent owner's expert and both errors are related. Let's go back to the decision to institute. The Board looked at the perisher reference and said, okay, it does not expressly disclose that its brush goes through all five layers. And petitioner realized this and that's why they put in their expert witness, Dr. Kahala, to say that, well, when I read perisher and I see the word biopsy, it means all five layers. So based on that, they instituted the decision. Mr. George, you haven't talked about the standard of review. What the reference teaches is a fact question. It is. And we are quite deferential to the Board's determination of what the reference teaches. Yes, Your Honor. But here, just as there was in the Institute Pester case that I've cited in my brief, the Board made a mistake. It's relying on a part of the reference that does not describe the invention. It's relying on a part of the reference that describes the prior art. And that really is the error here. That's how the Board, they made a mistake there and they made a mistake with Dr. Frommelitz's testimony as well. Well, you're discussing how in the description of the prior art, it talks about gross tissue and then talks about, to disclose a malignancy, for example, it may be appropriate to examine the mucous lining of the duct, the tissue duct, and even the adjacent tissue. But that same language, to some extent, parallels itself in the summary of the invention disclosure, which is undoubtedly referencing the perish or brush. It talks about gross tissue again, right, at line 24 of column 2. And then it also talks about the importance of more dependable diagnoses. And, you know, so in the background of the invention, it says to diagnose a malignancy, this is what you need to do. And then it says how this brush is going to result in more dependable diagnoses. So what's the problem with the Board having looked to the definition given in the prior art description when it then used similar or identical terms in the description of the brush? That's because you won't find those terms. You will find gross tissue, Your Honor, you're absolutely right, but you don't find adjacent tissue. And that's the whole crux of the Board's decision. The Board gets to the five to reach to diagnose a malignancy. That's what it says in the background section. And then in the summary of the invention, it says this new brush is going to more dependably allow you to diagnose malignancies. Yes, Your Honor, there's one other point, though. At the very next column at 2, it says, column 2 lines 5 to 10, it says, and it's talking about this diagnosis of malignancy, it's saying that what you don't want to do is risk perforating the duct. So when, what, this is in the back description of the prior art. It's talking about a cytology brush and it's talking about that it doesn't give you enough. Then it's talking about the biopsy forceps technique. But the Board has interpreted the language about reducing the risk of perforating the duct as equating to a non-lacerating brush, which means it wouldn't be a brush that lacerates the skin. That's the fact-finding they made with regard to that language. I don't know how that has any impact on whether the brush scrapes adjacent tissue. To get to adjacent tissue, it has to perforate the duct. And that's the argument that they made. And that's what Dr. Framwoods testified to. He talked about that the adjacent tissue could be the liver or the duodendum or something else. That's the whole problem here. You had two prior art techniques. The second one was the forceps. The forceps had a problem because you could perforate the duct. You could get to adjacent tissue. And that may be desirable, but in most instances it's not. And it's not what Parrisher wanted to do with his brush. We then go to the summary of the invention, and we never see that language again. We never see the language that you want to go perforate. They say don't perforate the duct, and they never say go to adjacent tissues. The only way you get to adjacent tissues is to perforate the duct. They don't want to do that. So this adjacent tissues, which is what everything is, the whole board's decision is based on that language. They say, oh, if you get adjacent tissues, you're going through the submucosa. Well, yes, you're going through everything. You're perforating the duct, and you're coming out on the other side. And that is not what Parrisher wants to do. And that's really the mistake here. And I think the petitioner realizes it's a mistake. They're not making these arguments. They're saying, oh, the board defined gross tissue sample to include adjacent tissues, but the board never did that. The board defined gross tissue sample to say a sample you can see with the naked eye. That's all they said. And that doesn't tell you what's in that sample. So the issue really here is how do they get to all five layers? The only way they get there is by reading this adjacent tissue language in the background of the invention where it's describing a prior art forceps technique and saying that, oh, the invention must go to adjacent, the Parrisher brush must go to adjacent tissues as well. And that, it's just not there. And when they went to Dr. Frommlich's testimony, the testimony that they're relying on is, and this is at page 89, the main testimony, A89, the main testimony they're relying on is about this same language. But if Parrisher describes taking a biopsy, doesn't that come within the claim to penetrate at least two layers of the epithelial tissue? No, Your Honor. And that's how this case started. They put an expert declaration to say biopsy means not only those two layers, but all five layers. And that was rejected because that's not what it means. And a biopsy can be one layer, two layers, three layers, four layers, five layers. And there's no teaching in Parrisher of anything more than a gross tissue sample, a biopsy. They use a bunch of words, but it really comes down to the same thing, just to take a sample from the first layer. And that's what the board found in the other two IPRs where we've dropped the appeal. And to get past just taking it from that first layer and to go down into the five layers, to go to the second layer, the third, going down to the fifth, the only difference between the decisions is they had to rely on this adjacent tissue language in the background of the invention that describes a biopsy forceps that Parrisher tells you it doesn't want to do. So that's why, Your Honor, we're aware of the standard. And the standard here is we believe this is just like the Institute Pasteur case where there is no evidence, where there's a misreading of the reference. How about the other cases? Why isn't there a stopple? Oh, there's not a stopple for many reasons. Number one, this isn't a second case. This is all the same case. We went below. We had three IPRs. And why isn't it law of the case? It's not law of the case because the issues are different. The issues in the other two patents had to do with just taking from the first layer. Claims 1 and 2 of the 913 patent and claims 1 and 2 of the 609 patent, those claims just say, I'm just going to take from the very top, the first layer, I'm just going to take a sample from that. And that's not the same issue as the claims in the 504 patent where you're taking five layers. And claims 3 and 4 and claim 3, those are a completely different kind of epithelium. They're in the bile duct. It's called glandular epithelium. It doesn't have the three layers. I mean, there's multiple reasons. The other reason is for claims 3 and 4, there were multiple grounds of rejection. And the case law says where there's multiple grounds, you don't have collateral estoppel as to any of them. So there's no collateral estoppel. There's no law of the case because, really, the issues were different. I will save the rest of my time for a while. OK. Yes, let's hear from the other side. Mr. Tucker. May it please the court. I'm Todd Tucker and I represent the United States Endoscopy Group. Based on the substantial evidence before us, it's clear that the board got the only contested issue, the only contested limitation correct. And that is whether the Parashar brush is capable of reaching the submucosa. Parashar expressly discloses throughout the entire specification, gross tissue sample or biopsy. And I know there's a lot of back and forth as to what biopsy means. But at the end of the day, as the record developed during the deposition of patent owner's own expert, Dr. Frommelitz, he indeed did say that he read Parashar to be capable of reaching that submucosa, reaching that fifth layer. And that's what the board relied on. In part, the board also relied on the fact that Parashar expressly discloses that claim limitation of reaching the submucosa. What patent owner, what appellant would have us do is actually kind of apply the wrong test for anticipation. As the board noted, the patent owner would have, and I'm not sure if I'm going to say this right, Ipposimus Verbus, a strict identity of words. Close enough. Thank you. A strict identity of words. And you've got to have those exact words. And that's the wrong test. The test for anticipation is what does one of skill in the art understand the disclosure to teach. And when you get through the deposition of Dr. Frommelitz at several different points, he is testifying that as one of skill in the art, pathologist with about 35 years of practice, he understands that when they're using these terms of adjacent tissue, gross tissue sample, biopsy, the meaning of Parashar is that they are, the Parashar is capable of reaching the submucosa. Now, appellant spends a lot of time trying to make hay out of this statement in column one that bleeds into column two where it's description of the prior art. But as the court noted, as the board noted, that is a statement of ultimately the goal of the Parashar brush. And I've heard my friends say that this statement about not perforating the duct, that it only appears in column one as the description of the prior art. That's actually not true. And what they're also saying that the invention of Parashar isn't contemplating this not perforating the duct. And that's not true. Because when you shoot in column two, you shoot right down into the summary of the invention in A571, which is the Parashar reference. And I'm in column two about line, I think, 11. It is an object of the invention to provide a method and apparatus that can better collect a tissue sample from a stricture and a doctor from another anatomical structure, preferably that can obtain a sufficient sampling of cells to assist in diagnosis more dependably. More particularly, there's a need to enable collection of a sample sufficient to qualify as a biopsy, but in a manner that reduces the risk of perforating the duct as compared with the known techniques. So there's a clear tie there of Parashar, of the goal and what's been done in the prior art and how he's trying to improve upon that with the brush. And then on two separate instances, talking about column two, and then again in column three, Dr. Frommelwitz goes ahead and he confirms that it is capable, the Parashar brush is capable of reaching the submucosa. And that's really important because there's also been a little bit of a battle over the application of the In Re Schreiber case. Appellant has an argument that this was a finding of inherency, and indeed it was not. The board simply found that under the classic test of anticipation, one of skill in the art, read the Parashar patent to include all of the limitations at issue. And the board also noted that the way the claims of the 044 patent are written to penetrate that is functional language. And I believe in In Re Schreiber, they're quoting a well-established case from the CCPA, which is In Re Swineheart, that when you claim in functional language, you run this risk that a piece of prior art that shows it is So I think that that's rather important. And again, this issue, this issue of whether Parashar reaches the submucosa, that's the only contested issue. There's a lot of noise about other things in the brief, about sufficient stiffness, that wasn't argued below. The patent owner never presented that. The sites and patent owners' brief where they say, hey, we argued sufficient stiffness, those are just quotes to where they're parroting the entire claim limitation. But that claim limitation from the 044 patent appears in claim 1, claim 12, claim 26. Excuse me, it's only in claim 1, the sufficient stiffness claim. Their whole argument was only about whether the submucosa was reached. They never argued whether sufficient stiffness was met. The board noted that. The board said it was admitted. And the board also noted on footnote 18, which is on page A84 of the appendix, it noted in footnote 18 that there were many, and I use plural, many new arguments were brought up at the oral hearing and those were not being considered. And that's one of them. So the sufficient stiffness argument's not properly before us here. Additionally, the court on A86 made a factual finding with regards to Parashar's teaching of sufficient stiffness. So the board went ahead and said it's admitted. And even though it's admitted, here's why it's there. So I Finally, when it comes to the estoppel issue, if these are separate proceedings, it's collateral estoppel. If they're the same proceeding, then it's law of the case. I think that appellant grossly misstates the 609 patent. They keep talking about how the claims of the 913 and the 609 patent are only to glandular epithelial tissue. That's not quite right. In the 609 patent claim four, while it does say glandular epithelial tissue, it then states that the brush of claim four in the 609 patent must reach the submucosa. That's the exact language that's in the 044 patent. And that's why the findings are the same. When we look Is it your view if we agree with you and find substantial evidence for the board's fact that we don't have to reach the collateral estoppel issue, or do you see that as a predicate? Do we have to reach it? No, Your Honor. If you reach that there's substantial evidence, the case is over. But again, I just want to point out that it's not correct to say that these are not identical findings, that the issues were actually litigated because they were. Claim four of the 609 patent requires that you go to the submucosa. That's the same exact finding that was used in the 044 patent. So it's estoppel rather than collateral estoppel? I mean, law of the case? I believe it's collateral estoppel, Your Honor, because there is a case, and it is escaping my memory right now, but there is a recent case that says consolidated hearings at the board are still considered to be separate cases. So that's why we believe it's collateral estoppel. If they were viewed as one case, then it would be law of the case. With that, Your Honors, I think at the end of the day, we need do nothing further than look at how one of Skill in the Art reads Parashar with the focus on the issue of whether Parashar is capable of reaching the submucosa. One Skill in the Art testimony confirms this. The way Parashar uses its terms confirms this. And so based on substantial evidence, the board got it right, and the claims under review are invalid. And the United States Endoscopy requests affirmance of that finding. Thank you. Okay. Thank you, Mr. Tucker. Thank you, Your Honor. So my colleague takes me to task because he says that reducing the risk of perforating the duct was mentioned more than once. I agree. It was mentioned several times. It's mentioned in the abstract. Parashar says, I don't want to perforate the duct. It's mentioned at the head of column two, don't perforate the duct. And it's mentioned where my colleague said, don't perforate the duct. What does that mean? That means the brush doesn't go to adjacent tissue. That means that what they relied on, what the board relied on, the whole crux of the board's case at column one, line 61 of 64, is not describing Parashar's brush. It can't. It says go to adjacent tissue. And yet, as my colleague points out, you don't want to go to adjacent tissue. You don't want to perforate the duct because that's how you're going to get there. This is not describing Parashar's brush. This is the linchpin of the board's decision that you get to five layers. And when Dr. Fromwitz's testimony, his only testimony where he really said, yes, you'll go through everything, was when they asked him about this same language, language that describes the prior art forceps technique that they were trying to improve on, not language that describes Parashar's brush. I have a factual question. Do you have to perforate the duct to be able to collect samples from the submucosa? You don't have to, but that was the argument that Petitioner made in their brief. They looked at this language. But it's possible, though, that Parashar discloses a brush capable of collecting cells from the submucosa, consistent, though, with its goal of trying to avoid perforating the duct. The problem with that is that there's no teaching anywhere in Parashar, and the board went through this and tried to find it, where you could find that fact. And the only way they could find that fact was to go to the background of the invention, and that's the error. On Inri Schreiber, the case doesn't apply, because for Inri Schreiber to apply, you have to show that the prior art device is identical in construction and therefore must function the same way. There's not evidence that it's identical in construction in this case. That was the whole argument in the case. And this argument about glandular epithelium, as their own expert admitted, glandular epithelium doesn't have five layers. So the fact that in 609, Claim 3 or 4 that he was talking about, that we went through glandular epithelium, that doesn't help. It's a different tissue, it doesn't have five layers, and their expert admitted that. Here the board just made a mistake with the reference. The mistake was then compounded when they relied on Dr. Frommlitz's testimony. And they asked him about that same prior art language, and that's where he said, yes, it would definitely go all the way through. And that's what they're hanging their hat on. You have no more questions? No questions. Thank you. Thank you. Thank you, Mr. George and Mr. Tucker.